

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00160-CV

**EOG RESOURCES, INC.,**
Appellant

v.

**CNH ENTERPRISE HOLDINGS, LTD.,**
Appellee

From the 156th Judicial District Court, McMullen County, Texas
Trial Court No. M-23-0029-CV-B
Honorable Patrick L. Flanigan, Judge Presiding

Opinion by:   Rebeca C. Martinez, Chief Justice

Sitting:   Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Lori Massey Brissette, Justice

Delivered and Filed: September 30, 2025

AFFIRMED

Appellant EOG Resources, Inc. ("EOG") appeals from the trial court's order denying its motion to dismiss under the Texas Citizens Participation Act ("TCPA"). Because we conclude the TCPA does not apply, we affirm.

## Background

Appellee CNH Enterprise Holdings, Ltd. ("CNH") filed an original petition, asserting seven claims, two in the alternative. CNH alleged that, in 2009, Charles and Nancy Hundley

executed an oil and gas lease in favor of Mitchell Petroleum Land Services, Inc. ("Mitchell") covering approximately 3,517 acres (the "Hundley Lease"). CNH further alleged that it succeeded to the Hundleys' interest and that Mitchell assigned its interest in the lease to EOG.

According to CNH, the Hundley Lease allowed for a primary term of up to five years, and for termination thereafter, save and except for certain retained tracts. According to CNH, the Hundley Lease terminated in 2014, and EOG did not designate any retained tracts according to a process specified in the lease. Consequently, according to CNH, the Hundley Lease terminated as to all but four areas of eighty acres surrounding four then-producing wells, which was the minimum retained acreage provided for under the lease. Nevertheless, as alleged, EOG drilled additional wells outside of the retained acreage after the lease terminated. Based on these allegations, CNH asserted three trespass claims and a conversion claim against EOG.[1] CNH also pled, in the alternative, that if the Hundley Lease had not terminated as alleged, then Mitchell and/or EOG had failed to develop the Hundley Lease as a reasonable and prudent operator would have.

CNH's seventh claim — the one challenged through EOG's TCPA motion — concerned a second lease, the "Gary Lease," that adjoins the Hundley Lease along a shared boundary. According to CNH:

> On March 15, 2014, EOG obtained a permit to drill the EOG Resources, Inc.-Gary 2H Well (API# 42-311-35909), at a location 148 feet from the boundary of the Hundley Lease. The Eagleville (Eagle Ford) Field Rules, which govern the well, require a minimum lease-line distance of 330 feet. EOG, which operated the Gary and purported to operate the Hundley Lease, without notice or consent from the Hundley Lessors, waived any notice or hearing on the Rule 37 exception, and granted itself permission to drill the Gary 2H Well at a location closer than allowed by the general lease line rule in the Eagleville Field.
>
> On April 20, 2014, EOG commenced drilling the Gary 2H Well and drilled a permitted lateral of 4,548.7 feet, at a distance of approximately 150 feet from the

---

[1] CNH also asserted a breach of contract claim related to a provision of the lease that is not relevant to this appeal.

lease line of the Hundley Lease. EOG completed the well on April 28, 2014, as a producing horizontal oil well. Upon information and belief, EOG fracked the well using water, chemicals and sand, causing fractures and injecting proppant over a distance greater than 150 feet from the Gary 2H Wellbore to capture the maximum amount of oil from the Gary 2H Well. From Railroad Commission records, it appears the Gary Lease has produced 276,420 barrels of oil and 231,980 mcf of natural gas. Therefore, the Gary 2H Well has caused and continues to cause substantial drainage to the lands covered by the Hundley Lease. Neither EOG nor the prior Lessee of the Hundley Lease has drilled an offset or answering well on the Hundley Lease to prevent such drainage.

Based on these allegations, CNH asserted an alternative claim for "Failure to Protect from Drainage:"

[S]hould the Court determine that the Hundley Lease did not terminate as pled above, then Plaintiff further asserts as follows. Under Texas Law, every oil and gas lease includes an implied covenant that obligates the lessee to protect the lease from drainage. Once a productive well has been drilled on an adjoining or adjacent lease, that is causing substantial drainage of hydrocarbons from the lease, the lessee is obligated to drill an offset well to prevent such drainage if a reasonable and prudent operator would drill such offset wells with a reasonable expectation of a profit to the lessee. The EOG - Gary 2H Well was drilled by EOG on a lease that adjoins the Hundley Lease, and completed as a producer on April 28, 2014. The well was drilled under an exception to Rule 37 that was granted administratively by the Railroad Commission because EOG, without notice to or consent from Plaintiff, waived any objection to the exception. The Gary 2H Well has caused and continues to cause substantial drainage of the Hundley Lease. Mitchell's and/or EOG's failure to drill an offset well to prevent such drainage has damaged Plaintiff in an amount in excess of the minimum jurisdictional limits of this Court.

EOG filed a TCPA motion, seeking dismissal of only CNH's failure-to-protect claim. EOG argued that its application for a drilling permit and a Rule 37 exception from the Texas Railroad Commission in connection with the Gary 2H Well constituted an "exercise of the right to petition," as that term is defined in the TCPA, and that CNH's failure-to-protect claim is "based on" and "in response to" the exercise of this right to petition, bringing the claim within the scope of the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(4), 27.003.

CNH then filed an amended petition, which removed its failure-to-protect claim, and also a response to EOG's TCPA motion. In its response, CNH contended that its "claims are based on

and in response to EOG's failure to act, not any statement EOG made to the Railroad Commission or the way it obtained its drilling permit." The trial court held a hearing on the TCPA motion. At the hearing, CNH recognized that its live pleading did not moot the TCPA motion because of the possibility for an attorney's fees award if EOG prevailed on its motion, even though the failure-to-protect claim had been withdrawn. *See id.* § 27.009(a)(1). CNH also agreed that EOG's permit application and application for a Rule 37 exception were "communications" and an "exercise of the right to petition," as those terms are defined by the TCPA. *See id.* § 27.001(1), (4). Consistent with its written response, CNH argued only that its failure-to-protect claim was not "based on" or "in response to" EOG statements or permits with the Railroad Commission and, consequently, the claim did not fall within the scope of the TCPA. *See id.* § 27.003(a). After hearing argument, the trial court took the matter under advisement and later issued an order denying EOG's TCPA motion. EOG timely appealed. *See id.* § 27.008(b).

## TCPA FRAMEWORK AND STANDARD OF REVIEW

The TCPA has a dual purpose: "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The Act explicitly directs courts to construe the statute "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). To that end, the TCPA enables a party who claims a legal action was filed "based on or is in response to" its exercise of a constitutionally protected right to seek dismissal of the underlying action, attorney's fees, and sanctions at an early stage in the litigation. *See id.* §§ 27.003, .005, .009(a).

A TCPA motion is subject to a three-step analysis with shifting burdens. First, the movant must demonstrate that the TCPA applies. *See id.* § 27.005(b). To meet this burden, the movant must demonstrate that the nonmovant's legal action "is based on or is in response to" the movant's exercise of a right to associate, speak freely, or petition. *Id.* §§ 27.003(a), .005(b). When deciding whether the TCPA applies, courts conduct "a holistic review of the pleadings." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018). If the movant meets its initial burden to show the TCPA applies, the burden then shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). If the nonmovant satisfies this requirement, the burden shifts back to the movant to establish, as a matter of law, any valid affirmative defense. *Id.* § 27.005(d). We review *de novo* whether the Act applies and whether the parties have met their respective TCPA burdens. *See USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023); *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

## DISCUSSION

The parties dispute only the first step of the TCPA analysis, and their dispute hinges on the required connection between a legal action and a protected right. The TCPA allows for the dismissal of a legal action that is "based on or is in response to" a party's exercise of its right to petition. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b). The TCPA defines "exercise of the right to petition" as including certain "communications" to governmental bodies. *See id.* § 27.001(1), (4). CNH asserted at the hearing before the trial court — and reiterates in its appellate brief — that it does not contest that EOG's applications with the Texas Railroad Commission for a drilling permit and a Rule 37 exception related to the Gary 2H Well meet the relevant definitions, so as to be considered "exercises of the right to petition." *See id.* Thus, the entire dispute concerns

whether CNH's failure-to-protect claim "is based on or is in response to" EOG's applications with the Railroad Commission.

"Based on" or "in response to" are not defined in the statutory scheme. *Walgreens v. McKenzie*, 713 S.W.3d 394, 400 (Tex. 2025). Therefore, our analysis requires us to construe these undefined terms by following settled principles of statutory interpretation. *Id.* at 399. "In construing a statute, our objective is to determine and give effect to the Legislature's intent." *Ferchichi v. Whataburger Restaurants, LLC*, 713 S.W.3d 330, 337 (Tex. 2025) (citation omitted). "We construe statutes according to their plain language, consider them as a whole, and presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *Walgreens*, 713 S.W.3d at 399 (citation omitted). "We give undefined terms in a statute their ordinary meaning unless a different or more precise definition is apparent from the term's use in the context of the statute." *Id.* (citation omitted).

In 2019, the Legislature amended the TCPA to "narrow[] the required nexus between the action and the protected activity by deleting the broadest connective language — 'relates to' — and authorizing a dismissal motion only when the action is 'based on or is in response to' the activity." *Id.* at 400 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a)). In its first opinion construing the remaining connective words after the 2019 amendment, the Texas Supreme Court recently wrote:

> [C]ourts of appeals have variously described the "based on" portion of the standard as requiring that the exercise of a protected right be the "gravamen" of the claim, *e.g., Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at *7 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.), that the claim be "factually predicated on" the exercise, *e.g., Apache Corp. v. Apollo Expl., LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at *3 (Tex. App.—Eastland May 18, 2023, no pet.), or that the exercise be a "main ingredient" or "fundamental part" of the claim, *e.g., Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL

4239350, at *8 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied). The latter description is premised on dictionary definitions, which are useful in discerning a statutorily undefined term's ordinary meaning. *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011); *see Base*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009) ("a main ingredient"; "the fundamental part of something"). And the "in response to" component of the provision "denotes some sort of answer or other act in return." *Ernst & Young*, 2023 WL 4239350, at *8; *see Response*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009) ("something constituting a reply or a reaction").

We interpreted somewhat similar statutory-nexus language in *Endeavor Energy*, which concerned the applicability of Chapter 95 of the Civil Practice and Remedies Code to a negligent-hiring claim. 593 S.W.3d at 309. In pertinent part, Chapter 95 applies to a "claim for damages caused by negligence" that "arises from the . . . use of an improvement to real property." TEX. CIV. PRAC. & REM. CODE §§ 95.001, 95.002. We explained that a claim "arises from" the use of an improvement if it "depends, in part, on proof that [the] contemporaneous use of an improvement caused the injury." *Endeavor Energy*, 593 S.W.3d at 311–12.

Although these phrases drawn from dictionary definitions — "factually predicated on," "a main ingredient of," "a fundamental part of," "in answer or reaction to" — do not replace the statutory language, they are helpful in understanding and applying it.

*Walgreens*, 713 S.W.3d at 400–01 (holding court of appeals erred by construing the TCPA to apply "when protected activity is the *only* ingredient or *only* part of the legal action, the legal action is *solely* dependent on proof of protected activity, or the legal action is instituted *solely* in reaction to protected activity" because the court of appeals improperly added the modifier "entirely" to the connective phrases).

For our part, we have previously analyzed whether the TCPA applied by considering the "gravamen" of a nonmovant's claims. *See Maynard v. Bankston*, No. 04-24-00074-CV, 2025 WL 1452565, at *3 (Tex. App.—San Antonio May 21, 2025, pet. filed) (mem. op.). And we have cited favorably to a sister court for the proposition that the required TCPA nexus is satisfied for legal actions that are "factually predicated on" allegations that fall within a protected right. *See Lingle v. Sage Architecture, Inc.*, No. 04-24-00633-CV, 2025 WL 2058073, at *3 (Tex. App.—San

Antonio Jul. 23, 2025, no pet.) (mem. op.) (citing *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 275 (Tex. App.—Tyler 2021, pet. denied)).

Here, the gravamen of CNH's failure-to-protect claim is that EOG breached its obligation to protect the Hundley Lease by failing to drill an offset well to prevent the drainage allegedly caused by the Gary 2H Well. In asserting its claim, CNH stated that an operator "is obligated to drill an offset well," under the conditions alleged, and that "EOG's failure to drill an offset well to prevent such drainage has damaged" CNH. Thus, as alleged, EOG's conduct in failing to drill is the focus of the claim, not EOG's communications with the Railroad Commission. *See, e.g.*, *HouReal Corp. v. Rescue Concepts Inc.*, No. 01-23-00211-CV, 2025 WL 1559289, at *7 (Tex. App.—Houston [1st Dist.] June 3, 2025, no pet.) (holding TCPA did not apply because gravamen of legal action was that TCPA movant allegedly conveyed property in breach of contract and explaining that movant's purportedly false statements — while not the main ingredient of the contract claim — might be relevant to resolve res judicata issues); *Dernick v. Foley & Lardner LLP*, No. 01-22-00251-CV, 2024 WL 3941011, at *8 (Tex. App.—Houston [1st Dist.] Aug. 27, 2024, no pet.) (mem. op.) (holding TCPA did not apply where former clients brought a lawsuit against the law firm that had represented them because the lawsuit was not based on or in response to the law firm's communications in a separate proceeding, but rather the firm's alleged actions and conduct in representing another client adverse to the former clients).

EOG argues that CNH's failure-to-protect claim falls under a broader claim for breach of the implied covenant an operator owes the owner of a leasehold to "protect the leasehold, which includes protection from local and field-wide drainage" (citing *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 889 (Tex. 1998)). "The more particularized elements of the duty to protect the leasehold from field-wide drainage may include the duty to drill replacement or additional wells,

re-work existing wells, seek field-wide regulatory action, seek Rule 37 exceptions from the Railroad Commission or other administrative relief, or seek voluntary unitization." *Id.* While it is true, as EOG posits, that a failure-to-protect claim may allege the failures of various duties, and even if we accepted, as EOG proposes, that a failure-to-protect claim could challenge the drilling of the Gary 2H Well itself, CNH simply has not alleged this matter as a basis for relief; CNH has alleged entitlement to relief based only on EOG's failure, as operator of the Hundley Lease, to drill an offset well on the Hundley Lease. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (observing a plaintiff's petition "is the best and all-sufficient evidence of the nature of the action." (citation omitted)); *see also Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 568 (Tex. 1981) ("A lessor is entitled to recover damages from a lessee for field-wide drainage upon proof (1) of substantial drainage of the lessor's land, and (2) that a reasonably prudent operator *would have acted* to prevent substantial drainage from the lessor's land.") (emphasis added).

As pled, CNH's claim is "based on" EOG's failure to drill an offset well on the Hundley Lease because the claim is "factually predicated on" the failure to drill, the failure to drill is "a main ingredient of" the claim, and the failure to drill is "a fundamental part of" the claim. *See Walgreens*, 713 S.W.3d at 400. The same cannot be said of EOG's communications with the Railroad Commission because those communications, made through EOG's permit application and application for a Rule 37 exception, do not concern an offset well or the failure to drill an offset well. Instead, the communications merely led to regulatory approval for a well (the Gary 2H Well) that allegedly caused drainage to an adjacent lease (the Hundley Lease), giving rise to

CNH's claim, which alleges the breach of a duty due to EOG's failure to drill an offset well on that adjacent lease.[2]

Nor is CNH's failure-to-protect claim "in answer or reaction to" EOG's communications with the Railroad Commission. *See Walgreens*, 713 S.W.3d at 400. "The fact that there were communications involved in the events giving rise to the claim does not create a sufficient nexus to the claim to invoke the TCPA." *Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at *3 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.) (brackets omitted) (quoting and affirming trial court where breach-of-fiduciary-duty claim did not fall within the scope of the TCPA because the claim could be stated without reference to a Rule 11 agreement, and the Rule 11 agreement merely provided some evidence to support the claim). Certainly, as EOG argues, its Railroad Commission filings "started the ball rolling on drilling the Gary 2H Well. And without the filings of the [a]pplications, that well would never have been drilled." However, this indirect link from communication to conduct (drilling the Gary 2H Well) is too attenuated to satisfy the TCPA's connective language where the conduct that actually forms the basis of CNH's claim (the failure to drill an offset well) is yet another step removed from the

---

[2] CNH's allegations regarding permitting provide some explanation for how the Gary 2H Well came to be drilled approximately 150 feet from the boundary line and how CNH allegedly failed to receive notice of the well; however, the claim could have been stated without any reference to EOG's applications with the Railroad Commission. *See Apache Corp. v. Apollo Expl., LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at *5 (Tex. App.—Eastland May 18, 2023, no pet.) (mem. op.) (holding TCPA did not apply to claim based on conduct in transferring assets, which could have been stated without reference to a press release referenced in the statement of facts); *cf. Walgreens*, 713 S.W.3d at 400 (explaining that a claim "arises from" the use of an improvement if it "depends, in part, on proof that [the] contemporaneous use of an improvement caused the injury" (citing *Endeavor Energy Resources, L.P. v. Cuevas*, 593 S.W.3d 307 311–12 (Tex. 2019)). CNH's failure-to-protect claim is unlike the slander-of-title claim described in *Horizontal Dev. Partners, LLC v. Endeavor Energy Res., LP*, 715 S.W.3d 439 (Tex. App.—Eastland 2025, no pet.), because CNH does not allege that EOG's filings with the Railroad Commission caused harm. In contrast, in *Horizontal*, a purported "true owner" of mineral interests, "explicitly stated that its cause of action was based on 'the malicious uttering and publishing of false and disparaging statements regarding title'" made by another purported owner in requests for drilling permits made to the Railroad Commission. *See id.* at 443, 447 (holding slander-of-title claim fell within the scope of the TCPA).

communication.[3]  At most, EOG's applications "only rise to the level of 'relates to' — what had been the least exacting level of connection permitted under the previous version of the TCPA." *HouReal*, 2025 WL 1559289, at *7 (citation omitted); *see Ladiwalla as Tr. of ZAL Tr. v. Bhojani as Tr. Protector of ZAL Tr.*, No. 05-24-01107-CV, 2025 WL 1547744, at *6 (Tex. App.—Dallas May 30, 2025, no pet.) (mem. op.) ("A claim is based on or in response to a communication when the communication itself causes the harm and triggers liability, such as in a defamation or libel.").

In sum, we conclude that CNH's failure-to-protect claim is not "based on" or "in response to" EOG's application for a drilling permit or request for an exception made to the Railroad Commission in connection with the Gary 2H Well.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b).  Consequently, the claim is not subject to dismissal under the TCPA.  *See id.*

## CONCLUSION

We affirm the trial court's denial of EOG's TCPA motion.

Rebeca C. Martinez, Chief Justice

---

[3] EOG cites to *Whataburger Restaurants LLC v. Ferchichi*, 698 S.W.3d 297, 302–03 (Tex. App.—San Antonio 2022), *rev'd*, 713 S.W.3d 330 (Tex. 2025), which in turn cites to *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 276 (Tex. App.—Tyler 2021, pet. denied) for the proposition: "A plaintiff's claims are 'in response to' a protected activity when they react to *or are asserted subsequently to* the communication." (Emphasis added).  EOG appears to contend that the "in response to" connective language is satisfied simply by the sequence of a communication followed by a legal action, "regardless of whether the relationship between the communication and the lawsuit is otherwise tenuous and unimportant." *Apache Corp. v. Apollo Expl., LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at *5 (Tex. App.—Eastland May 18, 2023, no pet.) (mem. op.) (distinguishing *Balyor*).  We agree with the Eastland Court of Appeals that "[t]he facts of *Baylor* . . . do not support such a broad interpretation." *Apache Corp.*, 2023 WL 3511262, at *6 ("[T]he [*Baylor*] pleadings made it clear that the parties' claims were in reaction or response to the communications themselves.").  Neither does our opinion in *Whataburger*. *See Whataburger*, 698 S.W.3d at 302 (holding TCPA applied to monetary sanctions request premised only on counsel's statements at mediation); *see also Ferchichi v. Whataburger Restaurants LLC*, 713 S.W.3d 330, 333 (Tex. 2025) (holding that a motion for sanction is not a "legal action" under the TCPA).